## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| BLEVINS, INC., | |
| Plaintiff, | |
| v. | Case No. _____ |
| LANDMARK TECHNOLOGY A, LLC, | |
| Defendant. | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Blevins, Inc., by and through its counsel of record, brings this Complaint for Declaratory Judgment of Invalidity and Declaratory Judgment of Non-Infringement of U.S. Patent Nos. 6,289,319 ("'319 Patent") and 7,010,508 ("'508 Patent") against Defendant Landmark Technology A, LLC, and states and alleges as follows:

### NATURE OF THE ACTION

1.     This is an action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, for declaratory judgment of invalidity and non-infringement of the '319 and '508 Patents arising under the patent laws of the United States, Title 35 of the United States Code.

### PARTIES

2.     Blevins, Inc. ("Blevins") is a corporation organized and existing under the laws of the State of Tennessee, having its principal place of business located at 421 Hart Lane, Nashville, Davidson County, Tennessee 37216.

.

1

3.     Upon information and belief, Landmark Technology A, LLC ("Landmark") is a limited liability company organized under the laws of the State of North Carolina with its principal place of business located at 2530 Meridian Parkway, Suite 300, Durham, North Carolina 27713.

4.     Upon information and belief, from issuance until December of 2018, the '319 and '508 Patents were exclusively licensed to Landmark Technologies, LLC ("Old Landmark").

## JURISDICTION AND VENUE

5.     The Court has original and exclusive subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this Complaint states claims arising under an Act of Congress relating to patents, 35 U.S.C. § 271.

6.     This is an action arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, based on the declaratory judgment sought by Blevins due to Landmark's and its predecessor's accusations against Blevins of patent infringement of the '319 and '508 Patents, and due to Landmark's pattern of actual infringement litigation concerning the '508 Patent, thereby giving rise to an actual case and controversy under 28 U.S.C. § 2201.

7.     This Court has personal jurisdiction over Landmark because Landmark sent to Blevins at its principal place of business in Nashville, Tennessee a letter alleging infringement and demanding that Blevins enter into a license agreement. (**Exhibit A**). Thus, Landmark has purposefully directed its charges of infringement to Blevins in Tennessee.  As such, Landmark has knowingly availed itself of personal jurisdiction in Tennessee.

8.     Venue is proper in this district because Blevins operates its principal place of business in Nashville, Davidson County, Tennessee, within the Middle District of Tennessee. Venue is also proper pursuant to 28 U.S.C. §§ 1391(b), (c), and 1400(b) because a substantial part

of the events giving rise to Blevins' claims occurred in the Middle District of Tennessee, or, alternatively, because Landmark is subject to this Court's personal jurisdiction.

## FACTUAL BACKGROUND

### A. GENERAL BACKGROUND

9.      On information and belief, Landmark does not practice the claims of the '319 or '508 Patents, and Landmark does not make, use, or sell any product or services of its own.

10.     On information and belief, Landmark's sole business model and activity involves sending letters accusing others of patent infringement and threatening litigation. (*See* **Exhibit E**).

11.     On information and belief, Landmark is, or has been, involved in at least eighteen (18) other actions against various companies involving claims about the '508 Patent, twelve (12) of which were filed by Landmark as patent infringement actions.[1] On information and belief, Old Landmark filed dozens of patent infringement actions against various companies asserting claims based on its "patent portfolio," including the '319 and '508 Patents.

12.     In each of the twelve (12) patent infringement actions filed by Landmark as actions alleging infringement of the '508 Patent, Landmark has sought an injunction against the accused infringer.

---

[1] *Landmark Technology A, LLC v. Specialty Bottle, Inc.*, Case no. 2:2019-cv-311 (W.D. Wash.); *Landmark Technology A, LLC v. The Essential Baking Co., Inc.*, Case no. 2:2019-cv-1208 (W.D. Wash.); *Landmark Technology A, LLC v. Woodland Foods, Ltd.* Case no. 1:2019-cv-2557 (N.D. Ill.); *Landmark Technology A, LLC v. U.S. Safety Gear, Inc.*, Case no. 4:2019-cv-270 (N.D. Ohio); *Landmark Technology A, LLC v. The Miami Corp.*, Case no. 1:2019-cv-653 (S.D. Ohio); *Landmark Technology A, LLC v. Amerimark Direct, LLC*, Case no. 1:19-cv-1077 (S.D. Ohio); *Landmark Technology A, LLC v. Frost Elec. Supply Co.*, Case no. 4:19-cv-3307 (E.D. Mo.); *Landmark Technology A, LLC v. Sterling Paper Co.*, Case no. 2:20-cv-769 (S.D. Ohio); *Landmark Technology A, LLC v. Tom Bihn Inc.*, Case no. 2:20-cv-328 (W.D. Wash.); *Landmark Technology A, LLC v. Mailender, Inc.*, Case no. 1:20-cv-479 (S.D. Ohio); *Landmark Technology A, LLC v. Stoneway Elec. Supply Co.*, Case no. 2:20-cv-974 (W.D. Wash); and *Landmark Technology A, LLC v. Art of Beauty Co.*, Case no. 1:20-cv-1637 (N.D. Ohio).

3

13.     Landmark also appears to systematically and quickly settle litigation involving the '508 Patent prior to any potentially damaging rulings on the baselessness of Landmark's claims or the invalidity of the '508 Patent, thereby preserving Landmark's ability to extract licensing fees from other companies moving forward.

**B.  LANDMARK'S DEMANDS TO BLEVINS**

14.     On or about July 3, 2020, Landmark, sent a demand letter (the "Demand Letter") to Mr. Brad Blevins of Blevins, stating that the letter regarded "Infringement of Landmark Technology A, LLC's Patent Rights." A true and correct copy of the Demand Letter as received is attached as **Exhibit A**.

15.     In the Demand Letter, counsel for Landmark claims that Landmark has "exclusive rights" to patents including the '319 and '508 Patents and further claims that "[Blevins'] data processing systems practices Landmark's ['319 Patent]," and "the specific functionalities implemented by Blevins using their servers and devices interfaced to Blevins' web servers constitutes use of the technology taught within the meaning of Claim 1 of the '508 patent." (*See* **Exhibit A**).

16.     This Demand Letter offers no element-by-element analysis relative to the claims of the '319 Patent or claims of the '508 Patent, or any other type of analysis or description of the specific Blevins systems believed to practice the claims of the '319 and '508 Patents. Instead, Landmark simply includes a link to a single page of Blevins' website[2] along with nonspecific accusations, which upon information and belief, are common to most or all of the demand letters issued by Landmark and its attorneys. (*See* **Exhibit E**).  In the Demand Letter, Landmark further

---

[2] *See* https://www.blevinsinc.com.

4

demanded payment through deceptive and misleading information regarding the importance of the '319 Patent as a "pioneer patent" known to be "of greater technical importance."

17.     The Demand Letter reiterated Old Landmark's previous offer to Blevins of "a non-exclusive license to its '319 Patent, for $65,000," and Landmark demanded a response from Blevins within fifteen (15) days.

18.     Nowhere in the Demand Letter did Landmark indicate that its offer was negotiable. Upon information and belief, this tactic is designed to extract payment from Blevins (and other recipients of similar letters), knowing that the payment would be significantly less expensive than defending against even an invalid patent.

19.     Blevins had no knowledge of Landmark, Old Landmark, or the '319 or '508 Patents until receipt of the demand letters sent on behalf of those entities.

**C. THE '319 PATENT**

20.     The '319 Patent, entitled "Automated Business and Financial Transaction Processing System," issued on or about September 11, 2001 to Lawrence B. Lockwood ("Lockwood") as the named inventor.  (*See* **Exhibit B**).

21.     The '319 Patent is directed to "A system for filing applications with an institution from a plurality of remote sites, and for automatically processing said applications in response to each applicant's credit rating obtained from a credit reporting service comprising a series of self-service terminals remotely linked via a telephone line to a first computer at the institution and to a second computer at the credit reporting service headquarters."

22.     The specification for the '319 Patent also states: "The principal object of this invention is to provide an economical means for screening loan applications." Other objects of the invention, as stated in the specification, include: "a system that ties together financial institution

data processing, the computer services of a credit reporting bureau, and a plurality of remote terminals. Each remote terminal displays the live image of a fictitious loan officer who helps the applicant through an interactive series of questions and answers designed to solicit from the applicant all the information necessary to process his loan application."

23.     Lockwood, as applicant, filed a "continuation-in-part" patent application in 1986 which essentially continued and amended an original patent application he had filed in 1984. This continuation-in-part patent application was rejected by the U.S. Patent and Trademark Office ("USPTO") in 1988 and subsequently abandoned. Thereafter, between 1988 and 1993, Lockwood sequentially filed four additional "continuation" patent applications, each having essentially identical patent specifications as the 1986 filing. All of these applications were also rejected by the USTPO and subsequently abandoned. Finally, on November 30, 1994, Lockwood filed yet another patent application, U.S. application no. 08/347,270 ("'270 Application"), which uses the same patent specification he had used in his five previous patent applications. The '270 Application ultimately became the '319 Patent.

24.     When Lockwood filed the '270 Application in 1994, he originally called the application an "Automatic Loan Processing Terminal System."

25.     Throughout the prosecution history of the '270 Application, Lockwood made numerous statements of record that define, and limit, the scope of the claims of the '319 Patent, including:

     a.     Changing the title of the application to "Automatic Business and Financial Transaction Processing System";

     b.     Stating that the claimed system had:

            " * * * the novel capability of processing the answer given
            by the operator in combination with prior answers and other

data to formulate or compose a new inquiry, or a response; and to make on-site decisions about the next operational step. The net effect and result being the operator's responses create a highly individualized, unique, 'one-of-a-kind' question and answer presentation."

c.    Arguing that this concept could be found in the "means for fetching additional inquiring sequences" of Claim 1, which was a required feature or limitation of the terminal according to Claim 1;

d.    Arguing that:

"The instant invention employs a type of problem solving technique known in the art as forward-chaining ('IBM Dictionary', page 285). Forward-chaining is a way to emulate human deductive or data-driven reasoning. * * * Forward-chaining is generally associated with knowledge bases that have large numbers of possible solutions, and are frequently used when data is the starting point for solving a problem. Examples of applications that are associated with forward- chaining are planning, designing and forecasting."

e.    Arguing that, in contrast to the "rigid, pre-ordained," menu systems described in the prior art references, his claimed invention had ability to dynamically "interact" with a customer, via a simulated loan officer displayed on a screen, rather than follow such rigid search and retrieval routines "and through which the user could be provided only with the exact thing that he had entered on the keypad";

f.    Filing an amendment to the '319 Patent adding 22 new dependent claims, and in doing so, arguing that, with respect to 35 U.S.C. § 102 and § 103 rejections over newly cited prior art, that:

"What distinguishes the structure recited in Claim 1 from Lockwood and from the above cited prior art is first, the architecture of the system, and second, the novel and non-obvious ability of the terminal to formulate independently from the central processor, intelligent inquiries based on a combination of prior and newly acquired information."

7

g.    Characterizing his concept as requiring the subject terminal to make the intelligent decisions itself —not the mainframe computer or server.

26.    Additionally, as the result of an *ex parte* reexamination of certain claims of the '319 Patent, in a section titled, "Claim Language Interpretation," the Examiner explained how he interpreted the elements of Claim 1:

> " * * * the 'means-plus-function' limitation 'means for fetching additional inquiring sequences in response to a plurality of said data entered through said means for entering and in response to information received from said central processor' is now interpreted to require the function . . . [a terminal] programmed to fetch additional inquiring sequences such as additional questions or options to a user in response to user entry of data and information receipt from the central processor, i.e., 'forward chaining' in response to user entry of data and information receipt from the central processor as characterized by the Patent Owner."

27.    The sole remaining independent claim of the '319 Patent, Claim 1, reads as follows:

1. An automatic data processing system for processing business and financial transactions between entities from remote sites which comprises:

a central processor

programmed and connected to process a variety of inquiries and orders transmitted from said remote sites;

said central processor including:

means for receiving information about said transactions from said remote sites;

means for retrievably storing said information;

at least one terminal at each of said remote sites including a data processor and operational sequencing lists of program instructions;

means for remotely linking said terminal to said central processor and for transmitting data back and forth between said central processor and said terminal;

said terminal further comprising means for dispensing information and services for at least one of said entities including:

a video screen;

means for holding operational data including programing, informing, and inquiring sequences of data;

means for manually entering information;

8

means for storing information, inquiries and orders for said transactions entered by one of said entities via said means for manually entering information, and data received through and from said central processor;

on-line means for transmitting said information, inquiries, and orders to said central processor;

on-line means for receiving data comprising operator-selected information and orders from said central processor via said linking means;

means for outputting said informing and inquiring sequences on said video screen in accordance with preset routines and in response to data entered through said means for entering information;

means for controlling said means for storing, means for outputting, and means for transmitting, including means for fetching additional inquiring sequences in response to a plurality of said data entered through said means for entering and in response to information received from said central processor;

said informing sequences including directions for operating said terminal, and for presenting interrelated segments of said operational data describing a plurality of transaction operations;

said programming sequences including means for interactively controlling the operation of said video screen, data receiving and transmitting means; and for selectively retrieving said data from said means for storing;

said means for storing comprising means for retaining said operational sequencing list and means responsive to the status of the various means for controlling their operation;

said central processor further including:

means responsive to data received from one of said terminals for immediately transmitting selected stored information to said terminal; and

means responsive to an order received from a terminal for updating data in said means for storing;

whereby said system can be used by said entities, each using one of said terminals to exchange information, and to respond to inquiries and orders instantaneously and over a period of time.

28.     Blevins markets and sells products online through its website www.blevinsinc.com and ships products to customers who place orders through its website.

29.     In order for a customer to access www.blevinsinc.com, the customer must first choose to install third party internet browser software (such as: Explorer, Firefox, or Safari) onto the customer's computer or device, through which a customer can then "visit" Blevins' website by

9

typing a URL into a text box of the browser or selecting a link to the URL for Blevins' website following a search engine query.

30.     The customer action causes the customer's internet browser to send a request to a third-party's web server which hosts Blevins' website via a standard internet connection.

31.     In response to the request from the customer's browser, a third-party web server causes Blevins' website to be displayed onto the customer's computer or device, after which the customer then interacts with the menus displayed on the customer's devices in order to select and order products.

32.     Blevins' website is hosted at a third party's web server farm that is neither owned nor operated by Blevins.

33.     Blevins does not own, operate, or control any of its customer's computers or mobile devices used to access its website.

34.     The computers and mobile devices used by Blevins' customers do not utilize any dynamic and sophisticated forward chaining analysis when interacting with Blevins' website.

35.     For at least these reasons, Blevins does not infringe any valid and enforceable claim of the '319 Patent.

36.     The '319 Patent discloses and claims generic, non-novel, and obvious subject matter related to processing business and financial transactions between entities from remote sites.

37.     Lockwood did not invent:

        a.      The central processor as disclosed and/or claimed in the '319 Patent;

        b.      The terminal as disclosed and/or claimed in the '319 Patent;

        c.      The video screen as disclosed and/or claimed in the '319 Patent;

10

d.        Means for receiving information as disclosed and/or claimed in the '319 Patent;

e.        Means for remotely linking the terminal to the central processor as disclosed and/or claimed in the '319 Patent;

f.        Means for holding operational data as disclosed and/or claimed in the '319 Patent;

g.        Means for manually entering information as disclosed and/or claimed in the '319 Patent;

h.        Means for storing information as disclosed and/or claimed in the '319 Patent;

i.        On-line means for receiving data as disclosed and/or claimed in the '319 Patent;

j.        Means for outputting informing and inquiring sequences on a video screen as disclosed and/or claimed in the '319 Patent;

k.        Means for controlling the means for storing, means for outputting, and means for transmitting as disclosed and/or claimed in the '319 Patent;

l.        Means for retaining the operational sequencing list as disclosed and/or claimed in the '319 Patent;

m.        Means responsive to the status of the various means for controlling as disclosed and/or claimed in the '319 Patent;

n.        Means responsive to data received as disclosed/claimed in the '319 Patent; or

o.        Any new, useful, or non-obvious hardware.

11

38.     Lockwood's claims in the '319 Patent are directed to abstract ideas; for example, the '319 Patent attempts to claim the abstract idea of automated data processing of business transactions. Nothing in the claims, "transform the nature of the claims" into patent eligible subject matter. Furthermore, "[t]he mere visitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice Corp. v. CLS Bank*, 134 S. Ct. 2347 (2014).

39.     The claims of the '319 Patent do not constitute patentable subject matter pursuant to 35 U.S.C. § 101, and therefore are invalid as directed to an abstract idea without any significant additional innovation.

40.     Additionally, the '319 Patent is invalid as anticipated pursuant to § 102 or as obvious pursuant to § 103.

41.     The claims of '319 Patent are also invalid under 35 U.S.C. § 112 for at least the reasons that the claims are indefinite, unsupported by the written description, and are not enabled by the specification which, for example, does not mention, teach, or discuss processing orders and does not provide any structure for the numerous means-plus-function clauses recited in the claims other than generic computer parts.

**D. THE '508 PATENT**

42.     The '508 Patent, entitled "Automated Multimedia Data Processing Network," was issued on March 7, 2006 to Lockwood as the named inventor. (**Exhibit C**).

43.     The '508 Patent is directed to an automated multimedia system for data processing. Specifically, the '508 Patent is directed to "terminals used by banking and other financial institutions to make their services available at all hours of the day from various remote locations." (**Exhibit C**, col. 1, ll. 22–25).

12

44.     The '508 Patent states "[t]he principal object of this invention is to provide an economical means for screening loan applications."  (*See* **Exhibit C**, col. 1, ll. 46–47).  Yet that description and the financial institutions aspects of the Patent, which limit the claims as explained below, have nothing to do at all with Blevins' business.  Other objects of the invention include:

> "a system that ties together financial institution data processing, the computer services of a credit reporting bureau, and a plurality of remote terminals.  Each remote terminal displays the live image of a fictitious loan officer who helps the applicant through an interactive series of questions and answers designed to solicit from the applicant all the information necessary to process his loan application."

(*See* **Exhibit C**, col. 1, l. 64 – col. 2, l. 4).

45.     The terminals of the claimed system are analogous to ATMs where a user visits the remote terminal and interacts with that terminal.  But instead of obtaining cash from one's accounts, the user obtains a loan or other financial product from a third-party institution.  Part of the invention was to move beyond typical vending machines and into the realm of "more complex types of goods and services distribution which requires a great deal of interaction between individual or between individuals and institutions." (**Exhibit C**, col.1, ll. 40–43).

46.     According to the '508 Patent, remote terminals present a live image of a "fictitious" automated loan officer who would guide users through questions and then "make a decision based on all the information gathered," including offering a loan amount. (**Exhibit C**, col. 1, l. 64 – col. 2., l. 11).

47.     According to the patent and prosecution history, the '508 Patent presents a solution to a problem of tying together financial institution data processing, the computer services of a credit reporting bureau, and a plurality of remote terminals.  Each remote terminal displays a live image and interactive series of questions.

13

48.     According to the Patent, its prosecution history, and its claims, the '508 Patent requires an interactive video presentation on the video display of the station or terminal. (**Exhibit C**, col. 7, ll. 4–12).

49.     The claims of the '508 Patent require that its method make suggestions, or independently provide something different than what was requested but more responsive to the user's needs, and output said suggestions via the video display.

50.     Claim 1 of the '508 Patent, which Blevins is alleged to have infringed, claims as follows:

1. An automated multimedia system for data processing which comprises:

a computerized installation including a database, means for entering data into said database, and a program means for storing, processing, updating, and retrieving data items in response to coded requests from stations in communication with said installation;

at least one station including a general purpose computer and a program applicable to said computer for sending said requests to said installation;

means for communicating data back and forth between said installation and said station;

said station further including:

a mass memory and means associated therewith for storing and retrieving textual and graphical data; a video display and means associated therewith for displaying textual and graphical data; means for entering information into said computer;

means for programming sequences of inquiring messages on said video display in accordance with preset routines and in response to said information;

said sequences including instructions to an operator of said station for operating said station;

and means for selectively and interactively presenting to said operator interrelated textual and graphical data describing a plurality of transaction options, and for selectively retrieving data from said mass memory;

means for storing information, inquiries, and orders for transactions entered by said operator via said means for entering information; means for transmitting said inquiries and orders to said installation via said means for communicating;

means for receiving data comprising operator-selected information and orders

14

from said installation via said means for communicating;

and means for interactively directing the operation of said computer, video display, data receiving and transmit ting means, and mass memory comprising means for holding an operational sequencing list, ***means for processing said operator-entered information, inquiries, and orders according to backwardchaining and forward-chaining sequences***, and means responsive to the status of said computer, display, mass memory, and data receiving and transmitting means for controlling their operation;

said means for processing including means for analyzing said operator-entered information and means, responsive to said means for analyzing, for presenting additional inquiries in response to said operator-entered information;

said computerized installation further including:

means responsive to items received from said station for immediately transmitting selected data retrieved from said database to said station;

means responsive to an order received from said station for updating data in said database including means for correlating to a particular set of data received from said station;

whereby said system can be used by a plurality of entities, each using one of said stations, to exchange data, and to respond to inquiries and orders instantaneously or over a period of time.

(**Exhibit C**, col. 6, l. 35 – col. 7, l. 3, emphasis added).

51.     In order to infringe on this Claim of the '508 Patent, if it were valid, which Blevins does not concede, Blevins must practice every single limitation/element of Claim 1 as set forth above.

52.     Claim 1 of the '508 Patent contains a number of means-plus-function limitations. Under 35 U.S.C. § 112, the claims are limited to the corresponding structure described in the Patent's specification.

53.     Upon information and belief, during prosecution, the Examiner initially rejected the patent application that ultimately issued as the '508 Patent under 35 U.S.C. § 112 as being indefinite, non-enabling, and lacking specification support.

54.     Upon information and belief, in response, the named inventor stated that support for the means-plus-function claims in the '508 Patent could be found in the specification, using as

15

support information from the specification that limits the claims to "financial institution[s]," "process[ing] loan applications," "periodically polling the various terminals . . . in order to verify their status and proper operation," and "fictitious officer."

55. Upon information and belief, the '508 Patent was challenged at the USPTO according to a program for requesting review by the USPTO's Patent Trial and Appeal Board ("PTAB") for patents that are business method patents. (*See* **Exhibit D**).

56. As a part of this USPTO PTAB review, the PTAB determined that the claims of the '508 Patent are directed toward "a financial product or service" under the America Invents Act ("AIA"), that "the subject matter of claim 1, as a whole, does not recite 'a technological feature that is novel and unobvious over the prior art,'" and that the claims are more likely than not invalid under 35 U.S.C. § 112. (**Exhibit D** at 12, 14, 20 & 22).

57. As a part of this USPTO PTAB review, the PTAB stated that there is no evidence that the '508 Patent is in any way a "pioneer patent." (**Exhibit D** at 14–15).

58. Upon information and belief, no final decision was reached in this USPTO PTAB review because the parties, including inventor Lockwood, settled the underlying dispute prior to a final decision on the merits by the PTAB.

59. Because of the PTAB decision, the '508 Patent does not, or should not, enjoy a presumption of validity.

60. Claim 1 of the '508 Patent requires utilization of backward or forward chaining in the processing of operator entered information, inquiries, and orders, and each of the other claims of the '508 Patent include the same requirements.

61. Blevins' website does not perform "backward-chaining" or "forward-chaining" to the extent Blevins can discern the meaning of such vague and insufficiently described limitations

16

of the claims. Therefore, Blevins does not infringe on Claim 1 of the '508 Patent or any other claim as Blevins does not use any backward or forward chaining process.

62. Furthermore, the '508 Patent has nothing to do with a standard e-commerce website such as Blevins'.

63. Blevins' website, through which Blevins sells its products through standard shopping e-commerce functionality, has nothing to do with an alleged complex terminal allowing an operator to interact with a financial institution through a video-based interface on said terminal where the video personality (the "fictitious loan officer") provides to the user directions, information, and products or services different than those sought by the user.

64. No reasonable litigant could conclude that Blevins' e-commerce website infringes the claims of the '508 Patent.

65. No reasonable litigant could conclude that the '508 Patent is valid and enforceable.

66. Upon information and belief, no assignment to Landmark of rights for the '508 Patent has been filed with the USPTO. Thus, it is unknown whether Landmark actually holds enforcement rights to the '508 Patent.

## COUNT I

## DECLARATION OF INVALIDITY OF U.S. PATENT NO. 7,010,508

67. Blevins restates and incorporates by reference all allegations in paragraphs 1-66 of this Complaint as if fully set forth herein.

68. Landmark claims to have exclusive rights to the '508 Patent.

69. Landmark has demanded that Blevins pay for a license to the '508 Patent due to its claims in the Demand Letter that Blevins practices Claim 1 of the '508 Patent.

17

70.     Landmark is in the business of threatening litigation and following through on that threat with respect to the '508 Patent.  A review of Landmark's record demonstrates a consistent, recent, and frequent pattern of infringement litigation over the '508 Patent, creating a reasonable fear that Blevins is Landmark's next infringement litigation target.

71.     The claims of the '508 Patent are invalid under at least any one of 35 U.S.C. §§ 101, 102, 103, and 112.

72.     The claims of the '508 Patent do not constitute patentable subject matter pursuant to 35 U.S.C. § 101 and are invalid or ineligible patents on abstract ideas.  The '508 Patent claims the abstract ideas of automated data processing of business transactions.  Nothing in the claims, "transforms the nature of the claims" into patent eligible subject matter. *Mayo Collaborative Servs. v. Prometheus Labs., Inc.,* 566 U.S. 66, 78, 132 S. Ct. 1289, 1291, 1297, 182 L. Ed. 2d 321 (2012).  Furthermore, "[t]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent eligible invention."  *Alice Corp. Pty. v. CLS Bank Int'l,* 573 U.S. 208, 223, 134 S. Ct. 2347, 2358, 189 L. Ed. 2d 296 (2014).

73.     Additionally, the '508 Patent is invalid as anticipated pursuant to 35 U.S.C. § 102 or as obvious pursuant to 35 U.S.C. § 103.  The PTAB stated that Claim 1 of the '508 Patent "as a whole, does not recite 'a technological feature that is novel and unobvious over the prior art.'" (**Exhibit D**, at 14).

74.     The claims of the '508 Patent are invalid under 35 U.S.C. § 112 for at least the reasons that the claims are indefinite and not enabled by the Patent's specification, which does not mention, teach, or discuss processing orders, and because the specification does not provide any structure for the numerous means-plus-function clauses recited in the claims other than generic computer parts.

18

75.     The PTAB determined that the claims of the '508 Patent were likely indefinite. (**Exhibit D**, at 20, 22).

76.     Based on Landmark's Demand Letter and the accusations of patent infringement contained therein, especially in light of Landmark's pattern of recent infringement litigation over the '508 Patent, and Blevins' denial of infringement, a substantial, immediate, and real controversy exists between Blevins and Landmark regarding whether Landmark is seeking to enforce invalid patents against Blevins.  A judicial declaration is necessary to determine the parties' respective rights regarding the '508 Patent.

77.     This controversy arises, in whole or in part, from Landmark's Demand Letter to Blevins claiming that Blevins infringes at least Claim 1 of the '508 Patent, and demanding Blevins pay for a license to Landmark.  Landmark's Demand Letter alone, and in combination with Landmark's known pattern and practice of filing patent infringement lawsuits against licensing targets that refuse to pay the license fee, clearly demonstrates Landmark's intent to seek to wrongfully enforce the '508 Patent against Blevins.

78.     A judicial declaration that '508 Patent is invalid is necessary and appropriate so that Blevins may ascertain its rights regarding the '508 Patent and to prevent further injury to Blevins.

79.     The '508 Patent is invalid, and Blevins is entitled to a declaration so stating.

## COUNT II

## DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,010,508

80.     Blevins restates and incorporates by reference all allegations in paragraphs 1-79 of this Complaint as if fully set forth herein.

81.     On information and belief, Landmark failed to conduct any pre-demand due diligence prior to demanding a $65,000 license payment from Blevins.  Even a cursory pre-demand research effort would have yielded that, under the plain language of the claims of the '508 Patent, Blevins' system and/or technology does not infringe any valid and enforceable claim of that Patent.

82.     Blevins has not infringed and does not infringe any valid and enforceable claim of the '508 Patent, whether literally or under the doctrine of equivalents.

83.     Additionally, Blevins is not liable for any induced, contributory, divided, or other indirect infringement of any valid and enforceable claim of the '508 Patent.  Neither Blevins nor its customers who access its website, nor anyone associated with Blevins, utilizes every element of any claim in the '508 Patent as is required for infringement.

84.     Based on Landmark's Demand Letter and the accusations of patent infringement contained therein, especially in light of Landmark's pattern of recent infringement litigation over the '508 Patent, and Blevins' denial of infringement, a substantial, immediate, and real controversy exists between Blevins and Landmark regarding whether Blevins directly or indirectly infringes or has infringed the '508 Patent.  A judicial declaration is necessary to determine the parties' respective rights regarding the '508 Patent.

85.     This controversy arises, in whole or in part, from Landmark's Demand Letter to Blevins claiming that Blevins infringes at least the Claim 1 of the '508 Patent, and demanding Blevins pay for a license to Landmark.  Landmark's Demand Letter alone, and in combination

with Landmark's known pattern and practice of filing patent infringement lawsuits against licensing targets that refuse to pay the license fee, clearly demonstrates Landmark's intent to seek to wrongfully enforce the '508 Patent against Blevins.

86.     A judicial declaration that Blevins does not directly or indirectly infringe any valid and enforceable claim of the '508 Patent is necessary and appropriate so that Blevins may ascertain its rights regarding the '508 Patent and to prevent further injury to Blevins.

87.     Blevins contends it does not infringe upon the '508 Patent and is entitled to a declaration so stating.

## COUNT III

## DECLARATION OF INVALIDITY OF U.S. PATENT NO. 6,289,319

88.     Blevins restates and incorporates by reference all allegations in paragraphs 1-87 of this Complaint as if fully set forth herein.

89.     The claims of the '319 Patent are invalid under at least 35 U.S.C. §§ 101, 102, 103, and 112.

90.     There exists a substantial, real, and immediate controversy between Blevins and defendant Landmark concerning validity of all claims of the '319 Patent, and this controversy warrants the issuance of a declaratory judgment.

91.     The claims of the '319 Patent do not constitute patentable subject matter pursuant to 35 U.S.C. § 101 and are an invalid or ineligible patent on an abstract idea. The '319 Patent claims the abstract idea of automated data processing of business transactions. Nothing in the claims, "transforms the nature of the claims" into patent eligible subject matter. *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78, 132 S. Ct. 1289, 1291, 1297, 182 L. Ed. 2d 321 (2012). Furthermore, "[t]he mere recitation of a generic computer cannot transform

21

a patent-ineligible abstract idea into a patent eligible invention." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 223, 134 S. Ct. 2347, 2358, 189 L. Ed. 2d 296 (2014).

92.     Additionally, the '319 Patent is invalid as anticipated pursuant to 35 U.S.C. § 102 or as obvious pursuant to 35 U.S.C. § 103.

93.     The claims of '319 Patent are invalid under 35 U.S.C. § 112 for at least the reasons that the claims are indefinite and not enabled by the patent's specification, which does not mention, teach, or discuss processing orders, and because the specification does not provide any structure for the numerous means-plus-function clauses recited in the claims other than generic computer parts.

94.     A judicial declaration that the '319 Patent is invalid is necessary and appropriate so that Blevins may ascertain its rights regarding the '319 Patent and to prevent further injury to Blevins.

95.     The '319 Patent is invalid, and Blevins is entitled to a declaration so stating.

## COUNT IV

## DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,289,319

96.     Blevins restates and incorporates by reference all allegations in paragraphs 1-95 of this Complaint as if fully set forth herein.

97.     Landmark is in the business of threatening litigation and following through on that threat specifically with respect to the '508 Patent.  A review of Landmark's record demonstrates a consistent, recent, and frequent pattern of litigation, creating a reasonable fear that Blevins is Landmark's next infringement litigation target.

98.     On information and belief, Landmark failed to conduct any pre-demand due diligence prior to demanding $65,000 license payment from Blevins.  Even a cursory pre-demand

research effort would have yielded that, under the plain language of the '319 Patent claims, Blevins' system and/or technology does not infringe any valid and enforceable claim of the '319 Patent.

99.     Blevins has not infringed and does not infringe any valid and enforceable claim of the '319 Patent, whether literally or under the doctrine of equivalents.

100.    Additionally, Blevins is not liable for any induced, contributory, divided, or other indirect infringement of any valid and enforceable claim of the '319 Patent.  Neither Blevins nor its customers who access its website, nor anyone associated with Blevins, utilizes every element of any claim in the '319 Patent as is required for infringement.

101.    Based on Landmark's Demand Letter, and the accusations of patent infringement contained therein, especially in light of Landmark's pattern of recent infringement litigation over the '508 Patent, and Blevins' denial of infringement, a substantial, immediate, and real controversy exists between Blevins and Landmark regarding whether Blevins directly or indirectly infringes or has infringed the '319 Patent.  A judicial declaration is necessary to determine the parties' respective rights regarding the '319 Patent.

102.    This controversy arises, in whole or in part, from Landmark's Demand Letter to Blevins claiming that Blevins infringes the '319 Patent, and demanding Blevins pay for a license to the '319 Patent or be sued.  Landmark's Demand Letter alone, and in combination with Landmark's known pattern and practice of filing patent infringement lawsuits against licensing targets that refuse to pay the license fee, clearly demonstrates Landmark's intent to seek to wrongfully enforce the '319 Patent against Blevins.

103.     A judicial declaration that Blevins does not directly or indirectly infringe any valid and enforceable claim of the '319 Patent is necessary and appropriate so that Blevins may ascertain its rights regarding the '319 Patent and to prevent further injury to Blevins.

104.     Blevins contends it does not infringe upon the '319 Patent and is entitled to a declaration so stating.

## PRAYER FOR RELIEF

**WHEREFORE**, Blevins, Inc. respectfully requests:

a.      A declaration that Blevins, Inc.'s services, systems, technology, and/or practices have not infringed and do not infringe, directly or indirectly, any valid and enforceable claim of the '319 Patent or '508 Patent, whether literally or under the doctrine of equivalents;

b.      A declaration that the '319 and '508 Patents are invalid for failure to comply with the requirements of 35 U.S.C., including at least §§ 101, 102, 103 and/or 112;

c.      An order declaring that this is an exceptional case and awarding Blevins its costs, expenses, disbursements, and reasonable attorneys' fees under 35 U.S.C. § 285; and

d.      That Blevins, Inc. be granted such other further relief to which Blevins may be entitled as a matter of law or equity, or which the Court deems to be just and proper.

Dated: August 3, 2020.

s/ Jeffrey D. Dyess

Jeffrey D. Dyess (Motion for admission *pro hac vice* forthcoming)
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203-2104
Phone: (205) 521-8000
jdyess@bradley.com

s/ Jason C. Palmer

Jason C. Palmer (Tenn. BPR No. 36146)
BRADLEY ARANT BOULT CUMMINGS LLP
Roundabout Plaza
1600 Division Street, Suite 700
Nashville, Tennessee 37203
Phone: (615) 252-3898
jpalmer@bradley.com

*Counsel for Plaintiff Blevins, Inc.*